# Green & Willstatter
## ATTORNEYS AT LAW
200 MAMARONECK AVENUE
SUITE 605
WHITE PLAINS, NEW YORK 10601

THEODORE S. GREEN
RICHARD D. WILLSTATTER

(914) 948-5656
FAX (914) 948-8730

E-MAIL: THEOSGREEN@MSN.COM

June 7, 2024

Hon. Kenneth M. Karas
United States District Court
300 Quarropas Street
White Plains, New York 10601

**MEMO ENDORSED**

    re: United States v. Jahreek Bush, 23-cr-545 (KMK)

Dear Judge Karas:

    Supplementing our previously-filed pre-trial motions, and based on new information recently provided by the government, the defense moves to controvert a warrant to search defendant Jahreek Bush's person which was issued by a New York court on April 25, 2023, and for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) with respect to the motion.

*Franks v. Delaware*
    "Where a defendant makes a preliminary showing that the government's affidavit misstated or omitted material information, *Franks* instructs a district court to hold a hearing to determine" whether the alleged misstatements or omissions in the warrant were made intentionally or with "reckless disregard for the truth" and, if so, whether any such misstatements or omissions were "material." *United States v.Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 U.S. Dist. LEXIS 143175, 2010 WL 4867402,at *7-8 (S.D.N.Y. Nov. 24, 2010). To determine whether misstatements are "material,"a court must "set[ ] aside the falsehoods" in the application, *United States v. Coreas*,419 F.3d 151, 155 (2d Cir. 2005), and determine "[w]hether the untainted portions [of the application] suffice to support a probable cause finding," *United States v. Nanni,* 59 F.3d 1425, 1433 (2d Cir. 1995); *see United States v. Lahey*, 967 F.Supp.2d 698, 717-21 (S.D.N.Y. 2013).

The warrant application
    The warrant (Exhibit A) authorized police to search a house at 28 Prince Street, Monticello, New York, and to also "search the person" of Mr. Bush. The same day the warrant was issued, police

1

searched 28 Prince Street ("the subject premises").[1]   They also seized Mr. Bush (who was not in or around the house but at a different location in Monticello) and searched his person and effects, from which they report recovering  a "fanny pack" that contained a firearm, ammunition, and narcotics.[2]

The warrant was issued upon the affidavit of New York state police investigator Joe Rodriguez.  He alleged that a confidential informant (CI) who had previously been found reliable had reported that Bush "was selling narcotics from the subject premises." Rodriguez Aff. ¶ 4.  An undercover officer (UC) is alleged to have reported to Rodriguez that the UC "had purchased fentanyl from a subject within the subject premises, known to the UC as JAHREEK BUSH". Rodriguez Aff. ¶ 5. Rodriguez alleges that during the second week of April 2023, Bush was contacted by a CI by telephone and was "observed" meeting with the CI and handing the CI "a clear plastic corner tie containing a white powdery substance believed to be crack-cocaine, in exchange for $40". Rodriguez avers that he later "observed the substance purchased by the CI" and it field tested positive for cocaine.  Rodriguez Aff. ¶ 7.

Rodriguez further alleges that during the fourth week of April 2023, the UC contacted Bush by telephone and later purchased heroin from him for $80.  Rodriguez Aff. ¶ 9.

In ¶ 12, Rodriguez alleges that "[p]ursuant to further police investigation conducted by NYSP, UC was shown a photograph of JAHREEK BUSH" and "positively identified BUSH as the person UC purchased narcotics from on the occasions mentioned herein and observed by your affiant on audio/video recording equipment."

Rodriguez also alleges that Bush had a pending unrelated charge under a Sullivan County indictment for which a bench warrant had been issued for Bush's failure to appear.  Rodriguez Aff. ¶ 13.

Recent government disclosures

On June 3, 2024, the government made certain disclosures to us in preparation for a *Wade* hearing in this case that is calendared for June 11, 2024.[3]  One of those disclosures, designated 3501-04, includes notes from an interview with another law enforcement officer who was involved with the April 2023 buys.  According to the 3500 notes, that officer reported observing the CI "meet up with Bush" on April 21 and that Bush was wearing a "ski mask."  The officer reported that during the encounter, "UC was in driver's seat – came out, they were in backseat, 2-4 minutes", adding "Heard his voice."  The officer then reports "Single photo ID after meeting Bush on April 21."

---

[1]According to law enforcement reports,  nothing by way of contraband or evidence was found in the search of 28 Prince Street. The portion of the warrant that we challenge here is the warrant to search Bush's person.

[2]The police have alleged in reports that on April 25 a UC communicated with the suspect (who they claim is Bush) about buying drugs and that Bush was arrested upon arriving at the location where the UC said he would be waiting. There, Bush was seized by police.

[3]The *Wade* hearing concerns a single-photo ID procedure that was done with a different UC in connection with transactions that occurred in January 2023.

3501-04.

       According to the notes, this same officer references an April 24, 2023, transaction.  He describes the person he says was Bush as wearing a "red facemask - facemask cut out to where you could see his face, cutout in mouth, eyes, and nose area (only covering outer part of his face) - could see it was him." Although the officer reported "[p]hysically tell it was Bush again", he added: "Heard voice again - sounded same as April 21."'

3501-4.

       After receiving this 3500 material, I inquired of government counsel about the reference to there being a "[s]ingle photo ID" following the April 21 transaction.  Government counsel advised me that it is their understanding that there was no such April photo ID and that they have no record of it.

<u>Suppression is required after a *Franks* hearing</u>

       There are at least two *Franks* issues with Rodriguez's warrant affidavit. First, based on the government's representations, Rodriguez' averment that the UC made a photo ID following an April transaction is not true.  Second, Rodriguez omitted to state in his affidavit that in the two April sales involving the UC, the seller was wearing a ski mask that largely concealed the suspect's face, and the UC may well have been relying to a large extent on a purported voice identification.[4]  Together and separately, all of these failures materially undermine probable cause for issuance of the warrant. In particular, absent Rodriguez' reference to a purported photo ID by the UC, the warrant affidavit lacks sufficient evidentiary facts connecting up Bush as the person who was suspected of selling drugs.  Rodriguez alleges in conclusory fashion that a CI had informed him that Bush was selling drugs from "the subject premises", but he furnishes no basis for the CI's knowledge, including how the CI knew Bush's name.  Rodriguez also claims to have corroborated the UC's supposed "positive[]" photo identification through Rodriguez' own observations on audio/video equipment. Yet, from our own review of discovery recordings that purport to be from those transactions, it does not appear that any subjects can be identified.  Accordingly, the portions of the warrant affidavit untainted by *Franks* error do not suffice to support probable cause to search the person of Jahreek Bush.  Nor is it clear that any other officer's observations of the sales sufficed to reliably identify the suspect.

       As noted, Rodriguez states that there had also been a bench warrant issued for Bush. However, the circumstances demonstrate the police were relying on the search warrant to search Bush's person and effects and were not simply executing a bench warrant for the limited purpose of bringing Bush to court on a pending matter.

---

    [4]We have been provided with buy reports for an April 10 transaction (involving a CI), an April 21 transaction (involving a CI and a UC), and an April 24 transaction involving a UC. Rodriguez' affidavit references a sale in the second full week of April to a CI and a sale in the fourth full week of April to the UC.  He omits reference to the April 21 transaction.  According to 3501-04, the suspect was wearing a mask on April 21 and April 24.

<u>Need to resolve issue of reported April photo ID</u>

Another issue which should be resolved is whether or not a single photo ID took place in April 2023. The government has advised that it believes no such photo ID happened in April. But, we have two law enforcement sources separately stating that it did – Rodriguez's sworn statement from 2023 and another officer's recent interview with government counsel. This discrepancy needs to be resolved 1) because it is relevant to our *Franks* motion, 2) to determine whether an additional *Wade* hearing is required as to the April 2023 transactions, and 3) because if a suggestive single-photo ID occurred it constitutes *Brady* material.

Very truly yours,

/s/ *Theodore S. Green*
Theodore S. Green

To: All counsel (by ECF)

For reasons that will be explained at the final pre-
trial conference, Defendant's motion is denied.

SO ORDERED.

7/8/2024

4

JUSTICE COURT : VILLAGE OF MONTICELLO
COUNTY OF SULLIVAN: STATE OF NEW YORK
-----------------------------------------------------------------X
IN THE MATTER OF THE APPLICATION FOR
A SEARCH WARRANT FOR A PREMISES          **APPLICATION**
LOCATED AT 28 PRINCE STREET,             **BY AFFIDAVIT**
IN THE VILLAGE OF MONTICELLO, TOWN OF THOMPSON
COUNTY OF SULLIVAN, STATE OF NEW YORK
----------------------------------------------------------------- X

COUNTY OF SULLIVAN )
              )    SS:
STATE OF NEW YORK )

INVESTIGATOR JOE RODRIGUEZ, being duly sworn, deposes and says that:

1. I am employed as an Investigator with the New York State Police, and am a member of the Troop F VGNET Narcotics Unit, pursuant to which my duties include investigations into narcotics crimes in the County of Sullivan, State of New York and elsewhere. I have been continuously employed as a police officer since 2014, when I became a sworn police member of the New York City Police Department, and later joined the New York State Police in 2018. During the course of my career, I have completed all classroom and field training required to become and remain versed in the enforcement of the laws of the State of New York. I was promoted to Investigator within the Bureau of Criminal Investigations of the New York State Police in July of 2022. As a Trooper and, subsequently, an Investigator, particularly now in connection with my duties as a member of VGNET, I am often involved in the enforcement of the Penal Law of the State of New York, specifically including offenses relating to the illegal possession of controlled substances, including possession of controlled substances in violation of Article 220 of the Penal Law. Over the course of my career, I have worked hundreds of cases involving the possession, sale, and trafficking of narcotics. I have also investigated and seized proceeds of these types of crimes on numerous occasions.

2. This affidavit is submitted in support of the within application for a search warrant for the subject premises, being 28 Prince Street, in the Village of Monticello, County of Sullivan, Town of Thompson, State of New York. 28 Prince Street is accessed from the Sullivan County Courthouse located at 414 Broadway, Village of Monticello, County of Sullivan, State of New York, by heading southwest on Bank Street toward NY-42/Broadway, turn right onto NY-42/Broadway and travel for approximately .2 miles and then turn left onto Prince Street and travel for approximately .1 miles and arrive at the subject premises on the right hand side, a two story building, tan vinyl siding, red shudders, with the numerals "28" on the door.

USAO_000182

3. The police seek a warrant authorizing a search, by members of the New York State Police, as well as other agencies assisting the New York State Police with the execution of this warrant, including police members of the Sullivan County Sheriff's Office, Sullivan County District Attorney's Office and/or Village of Monticello Police Department, for property that is unlawfully possessed; property that is possessed for the purpose of being used to commit or conceal the commission of an offense; and/or property which constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense in violation of Article 220 of the Penal Law of the State of New York, and seizure of such items, to wit: unlawfully possessed controlled substances, particularly cocaine and fentanyl, as well as implements used in the course of the commission of the offense of criminal possession of a controlled substance, including scales, as well as all apparatuses, implements and utensils utilized to traffic controlled substances, and any and all packaging materials, monies, written and/or printed notes of log books or ledgers associated with trafficking of the controlled substance cocaine and/or other unlawfully possessed or sold controlled substances, any materials, documents or records indicating or depicting names and identities of co-conspirators , types and/or quantities of controlled substances, monies owed or paid to co-conspirators and/or records revealing how monies derived from the sales and trafficking of controlled substances are spent or disbursed, namely property used to commit or conceal the offense of criminal possession and/or sale of a controlled substance, as defined in Article 220 of the Penal Law of the State of New York, and also property constituting evidence of the crime of criminal possession and sale of controlled substances which tends to demonstrate that an offense was committed and the commission of the offense of criminal possession and/or sale of controlled substances or the conspiracy to do the same, to wit: said written or printed notes or log books or ledgers associated with trafficking of the controlled substances indicating or depicting names or identities or co-conspirators and types and quantities of controlled substances, monies owed or paid co-conspirators, and records revealing how monies, derived from sales, are spent or disbursed, certain items relating to the possession and sale of those narcotics, such as packaging materials, scales, transaction ledgers, currency, and other items used in the distribution, division, packaging and sales of narcotics, and items consisting of proceeds of such transactions which tend to demonstrate the commission of such offense by a particular person as well as cellular telephones; the foregoing records may be contained within computers and/or cellular telephones and, therefore, the police seek authority to search for and seize computers and/or electronic media and/or cellular telephones capable of storing such records, and to conduct a search thereof for such records. The police further seek authority to search all containers within the subject premises, as such containers are typically used and clearly are capable of use to store items associated with the illegal possession and/or distribution of the controlled substance cocaine, records in connection therewith, and all other items for which the police now seek authority from the Court to search. The search of computers, electronic media and/or cellular telephones includes a search within such items for any evidence of communications, whether by text message, telephone call, voice or audio or video recording, or other data evidencing communication via any application or method for evidence of the illegal possession and/or distribution of the narcotic drug

USAO_000183

cocaine and/or the commission of such offense by a particular person and/or the conspiracy to do the same, including evidence of memorialization of evidence of the commission of the crime of possession and/or sale of a controlled substance including photographs, videos and/or recordings,; the police further seek authority to search for items which tend to demonstrate the commission of the offense of possession and/or sale of a controlled substance including items that tend to demonstrate that a particular person is a resident and/or user of the subject premises and, thus, illegally possesses such contraband within the subject premises, such as invoices, bills, access keys/cards, personal correspondence, identification and other materials associating his or her identity with the subject premises.

4.  This investigation utilized a confidential informant ("CI"), known to your deponent. I know the confidential informant to be familiar with the personal use of narcotics and other illicit drugs. The CI informed the deponent that the subject, JAHREEK BUSH, was selling narcotics from the subject premises. The information provided by the CI has been found to be reliable by your affiant. Your affiant has found the CI to be reliable by observing the CI in previous investigations and has personally confirmed information provided to the affiant from the CI through review of audio/video, my personal observations and subsequent field testing.

5.  The information supplied by the UC for this investigation has been corroborated, including, among other methods, via physical surveillance, police observation of telephone communications in connection with this investigation, and by equipping the UC with an audio/video recording device, which recorded the transactions during which the UC participated as specified herein, and which recordings were consistent with the UC's recitation of the events in connection with such specified controlled purchases. Furthermore, information supplied via further police investigation into this case has further corroborated that probable cause exists to believe that the items for which I seek authority to search are located within the aforesaid subject premises. UC reports to me that UC has purchased fentanyl from a subject within the subject premises, known to the UC as JAHREEK BUSH, hereinafter "BUSH".

6.  This evidence is consistent with all of the other evidence attendant to this illegal narcotics distribution investigation. UC involvement in this investigation was conducted under the direct supervision of Senior Investigator David Ruderfor for each of the narcotics transactions described herein. Your affiant corroborated the statements of the UC in connection with this investigation and the UC's statements have further been corroborated by the aforesaid police observations of telephone communications and audio/video and drug sales set forth herein.

7.  During the second full week of April, 2023, CI contacted the subject, BUSH via telephone to arrange the purchase of crack-cocaine. The CI arrived at a pre-agreed upon location near the subject premises. The CI arrives at the location and BUSH is observed leaving the subject premises and meeting CI and handed the CI a clear plastic corner tie containing a white powdery substance believed to be crack-cocaine, in exchange for $40.00 pre-recorded U.S. currency.

USAO_000184

BUSH is then observed leaving the location and re-entering the subject premises. The CI was searched before and after the aforementioned purchase and found to be free of any other contraband. I observed the substance purchased by the CI during this transaction from BUSH and it is consistent with what I know, based upon my training and experience, to be the appearance, color, texture and consistency of the narcotic drug of cocaine. The substance was field tested by a member of the New York State Police in accordance with their training and experience in the administration of such tests, returning a positive result for the narcotic drug cocaine.

8. The audio/video surveillance of this transaction is consistent with the reports to me by the CI that CI purchased cocaine from BUSH during this transaction.

9. During the fourth full week of April of 2023, after the aforesaid transaction, UC contacted the subject, BUSH, via telephone to arrange a purchase of heroin. UC drove the UC's vehicle to the pre-agreed location near Prince Street, Monticello, New York. BUSH is observed leaving the subject premises get onto a bicycle and meets the UC at the location. BUSH hands UC a tin foil package containing a tan powdery substance, sold as heroin, and the UC gives BUSH $80.00 in pre-recorded U.S. currency. UC and BUSH leave the location and BUSH is observed re-entering the subject premises. I observed the substance purchased by UC during this transaction from BUSH and it is consistent with what I know, based upon my training and experience, to be the appearance, color, texture and consistency of the narcotic drug of fentanyl. The substance was field tested by a member of the New York State Police in accordance with their training and experience in the administration of such tests, returning a positive result for the narcotic drug fentanyl.

10. I reviewed the audio/video surveillance of this purchase captured by UC, which is consistent with UC's report of having purchased fentanyl from BUSH as set forth herein.

11. It is clear that, from the subject premises, the individual identified heretofore as BUSH is engaged in the ongoing business of distribution of the narcotic drugs cocaine and fentanyl.

12. Pursuant to further police investigation conducted by NYSP, UC was shown a photograph of JAHREEK BUSH (DOB: ), and positively identified BUSH as the person UC purchased narcotics from on the occasions mentioned herein and observed by your affiant on audio/video recording equipment. DCJS records further reveal that BUSH has previously been convicted of the following:

   a. Attempted Robbery in the Second Degree, a class D drug felony, on or about March 7, 2016, before the Richmond County Supreme Court, for which he was sentenced to six months incarceration followed by five years of probation;

13. The defendant is presently charged with Criminal Possession of a Weapon in the Second Degree, a class C violent felony and False Personation, a class B misdemeanor via Sullivan County

Indictment 111-2022. The defendant has failed to appear and a bench warrant was issued by the Honorable James R. Farrell, County Court Judge.

14. It is clear, based upon the foregoing, that BUSH is engaged in an ongoing business of distributing narcotic drugs from rooms within the subject premises. The defendant is further using his cellular device to conduct such transactions and it is reasonable to believe that evidence of such transactions are documented and present on his cellular device. In your deponent's training and experience it is commonplace for individuals engaged in the practice of the sale of narcotics to use their cellular phones to conduct drug transactions via voice, text messaging, and also to photograph or video their use or possession of such substances and/or scales and/or packaging materials or other drug paraphenalia. Therefore, given that the defendant is engaged in the sale of narcotics which was negotiated through his cellular device, it is reasonable to believe that a search of his device will yield evidence in connection with this investigation and the use and sale of narcotics.

15. Based upon my training and experience, individuals involved in illegal possession, sale and/or trafficking of narcotics typically possess items such as scales, packaging materials apparatuses, implements and utensils utilized to prepare controlled substances for sale or to otherwise traffic controlled substances, including packaging materials, scales, cutting or diluting agents. Probable cause exists to believe that the aforementioned items are located within the subject premises, as well as further property that is unlawfully possessed; property that is possessed for the purpose of being used to commit or conceal the commission of an offense; and/or property which constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense in violation of Article 220 of the Penal Law of the State of New York, to wit: unlawfully possessed controlled substances, particularly including cocaine, fentanyl, as well as implements used in the course of the commission of the offense of criminal possession of a controlled substance, including scales, as well as all apparatuses, implements and utensils utilized to traffic controlled substances, and any and all packaging materials, monies, written and/or printed notes of log books or ledgers associates with trafficking of the controlled substances cocaine and/or other unlawfully possessed or sold controlled substances, any materials or documents or records indicating or depicting names and identities of co-conspirators, types and/or quantities of controlled substances, monies owed or paid co-conspirators and/or records revealing how monies derived from sales of trafficking of controlled substances are spent or disbursed, namely property used to commit or conceal the offense of criminal possession and/or sale of a controlled substance, as defined in the Article 220 of the Penal Law of the State of New York, and also property constituting evidence of the crime of criminal possession and sale of controlled substances which tends to demonstrate that an offense was committed and the commission of the offense of criminal possession and/or sale of controlled substances or the conspiracy to do the same, to wit: evidence of the presence within the subject premises of a particular person, including by bills, keys/access cards, mail, items of identifications and/or other personal materials demonstrating the presence of particular persons within the subject premises, said written or printed notes or log books or ledgers associated with trafficking of the

USAO_000186

controlled substances indicating or depicting names or identities or co-conspirators and types and quantities of controlled substances, monies owed or paid co-conspirators, and records revealing how monies, derived from sales, are spent or disbursed certain items relating to the possession and sale of those narcotics, such as packaging materials, scales, transaction ledgers, currency, and other items used in the distribution, division, packaging and sale of narcotics, and items consisting of proceeds of such transactions which tend to demonstrate the commission of such offense by particular persons, as well as cellular telephones; the foregoing records may be contained within computers and/or cellular telephones, and, therefore, the police seek authority to search for and seize computers and/or electronic media and/or cellular telephones capable of storing such records, and to conduct a forensic search thereof for such records, as well as for evidence of photographs or other memorializations of possession and/or distribution of cocaine, whether via app records, photo/video media or through the aforesaid conversations and/or communications.

16. The police further seek authority to search all containers within the subject premises, as such containers are typically used and clearly are capable of use to store items associated with the illegal possession and/or distribution of the controlled substances cocaine and/or fentanyl, records in connection therewith and all other items for which the police now seek authority from the Court to search.

17. The search of computers, electronic media and/or cellular telephones includes a search within such items for any evidence of communications, whether by text message, telephone call, voice or audio recording, or other data evidencing communication via any application or method, for evidence of the illegal possession and/or distribution of the narcotic drug cocaine, fentanyl and/or other controlled substances and the commission of such offense and/or the commission of such offense by a particular person and/or the conspiracy to do the same.

18. In addition to searching for the above-described controlled substance or substances and related items, it is reasonable to believe that an occupant and/or user of the subject premises, being a person who it is reasonable to believe, is in illegal possession of a controlled substance or substances, possesses items therein that tend to demonstrate that he or she is a resident of the subject premises and, thus, illegally possesses such contraband within the residence, such as bills, keys/access cards, personal correspondence, identification and other materials associating his or her identity with the subject premises; the police seek permission to search for such evidence, as it tends to demonstrate the commission of an offense in violation of Article 220 of the Penal Law by a particular person.

19. I seek authority to search for and seize all the evidence set forth herein. I seek authority to conduct the search of computers and/or cellular telephones in an off-site laboratory setting.

20. I have participated in the execution of search warrants involving narcotics investigations numerous times during the course of my career as a police officer. Based upon my training and experience in the execution of such warrants, it is a common practice for individuals involved in the illegal

distribution of narcotics to immediately attempt to destroy all evidence of their illegal activities upon notification of police presence. This includes destruction and attempted destruction of narcotics, including by flushing drugs down toilets or sinks to prevent their discovery by law enforcement, and destruction and attempted destruction of evidence of illegal narcotics sales by attempting to destroy cell phones, ledgers, or any other items that tend to connect subjects to illegal narcotics distribution. Based upon this investigation, I seek authority to enter the subject premises without providing anyone therein notice of police authority and purpose in entering prior to such entry to prevent the destruction of evidence prior to police entry. Based upon all of the foregoing, I seek permission from the Court to enter the above-described subject premises without providing notice to the occupants thereof, for the reasons provided in Criminal Procedure Law Section 690.35(4)(b).

21. It is reasonable to believe that BUSH may use force in protecting himself from the detection of further evidence implicating him, or any other occupant or user of the subject premises, in this narcotics investigation. This belief is based upon my review of this investigation, including BUSH's prior criminal conviction for Attempted Robbery in the Second Degree and pending criminal charge of Criminal Possession of a Weapon in the Second Degree. Because it is reasonable to believe that BUSH has knowledge that he engages in illegal distribution of narcotics exposes him to a potential prison sentence, it is further reasonable to believe that BUSH would employ force, if it is available to him, in an effort to prevent the discovery of evidence in connection with this investigation. These reasons support my request for permission from this Court to execute the warrant without providing notice to the occupants of the subject premises.

22. Further, based upon my training and experience, as well as all of the circumstances set forth above, it is evident that a danger exists that BUSH may attempt to physically interfere with the execution of a search warrant for the purpose of preventing discovery of his criminal acts. It is reasonable to believe that BUSH may be willing to resist the securing of the subject premises by police in an effort to avoid the detection of his illegal acts and to avoid arrest. Based upon my training and experience, it is much more likely that police can enter a premises safely, avoiding physical danger and the potential for destruction of evidence, when it is dark outside, such that a subject cannot detect police presence or arm himself against execution of a search warrant.   Moreover, it is often much easier for the police to effectuate a search warrant authorizing entry without prior notice when the police are able to situate themselves outside the subject residence safely, in cover of darkness. This, again, may prevent a subject from destroying evidence and attempting to avoid apprehension of himself and/or, as in this case, releasing a potentially dangerous animal toward police. Therefore, I seek permission from this Court to enter the subject premises at any time of the day or night, and a warrant permitting the police to enter the subject premises at any time of the day or night.

23. Based upon all of the foregoing, it is clear that the above-described subject premises is being used for the purpose of the illegal possession and/or distribution of controlled substances in violation

USAO_000188

of Article 220 of the New York State Penal Law in Sullivan County, New York, and that within the subject premises the evidence for which I seek authority to search is located; there is probable cause to believe that the above-described premises contains property as described in CPL 690.10(1), (2), (3), and/or (4), including narcotics, and such other materials as herein described and I seek authority to search for and seize the same. I seek all of the authority within the proposed warrant submitted herewith and specifically make application for authority to retain physical custody of all evidence seized pursuant to the execution of the warrant for which I hereby make application in police custody subject to further order of this Court or another court of competent jurisdiction.

24. The police seek a search warrant authorizing entry into the subject premises for the purpose of searching for those items as heretofore described, being property as described in New York Criminal Procedure Law Sections 690.10 (1), (2), (3), and/or (4). I request the authority set forth in the proposed warrant submitted herewith, including authority to conduct a search of the subject premises at any time of the day or night without notice to the occupants thereof and directing that should such property or evidence or any part thereof be found, it be seized, retained and stored by the New York State Police and, if so ordered, be made accessible to the court together with such other and further relief as this Court may deem just and proper.

_____
NYSP Investigator JOE RODRIGUEZ

Sworn to before me this 25th day of April 2023.

_____
**HON. JAMES R. FARRELL**
Sullivan County Court Judge
As Village of Monticello Justice

USAO_000189

**JUSTICE COURT : VILLAGE OF MONTICELLO**
**COUNTY OF SULLIVAN: STATE OF NEW YORK**

**SEARCH WARRANT**

HON. JAMES R. FARRELL
Judge of the Sullivan County Court
As Village of Monticello Justice

TO ANY POLICE MEMBER OF THE NEW YORK STATE POLICE, SULLIVAN COUNTY
SHERIFF'S OFFICE, VILLAGE OF MONTICELLO POLICE DEPARTMENT, SULLIVAN COUNTY
DISTRICT ATTORNEY'S OFFICE OR OTHER POLICE AGENCY OR POLICE OFFICER DULY
AUTHORIZED TO EXECUTE OR ASSIST SUCH AGENCIES IN THE EXECUTION OF THIS
SEARCH WARRANT:

YOU ARE HEREBY AUTHORIZED TO SEARCH: the subject premises, being 28 Prince Street, in the
Village of Monticello, County of Sullivan, Town of Thompson, State of New York, which is accessed
from the Sullivan County Courthouse located at 414 Broadway, Village of Monticello, County of Sullivan,
State of New York, by heading southwest on Bank Street toward NY-42/Broadway, turn right onto NY-
42/Broadway and travel for approximately .2 miles and then turn left onto Prince Street and travel for
approximately .1 miles and arrive at the subject premises on the right hand side, a two story building, tan
vinyl siding, red shudders, with the numerals "28" on the door.

AND TO SEARCH FOR AND SEIZE THEREFROM THE FOLLOWING PROPERTY: property that is
unlawfully possessed; property that is possessed for the purpose of being used to commit or conceal the
commission of an offense; and/or property which constitutes evidence or tends to demonstrate that an
offense was committed or that a particular person participated in the commission of an offense in violation
of Article 220 of the Penal Law of the State of New York, and seizure of such items, to wit: unlawfully
possessed controlled substances, particularly cocaine, heroin, fentanyl as well as implements used in the
course of the commission of the offense of criminal possession of a controlled substance, including scales,
as well as all apparatuses, implements and utensils utilized to traffic controlled substances, and any and
all packaging materials, monies, written and/or printed notes of log books or ledgers associated with
trafficking of the controlled substance cocaine and/or other unlawfully possessed or sold controlled
substances, any materials, documents or records indicating or depicting names and identities of co-
conspirators , types and/or quantities of controlled substances, monies owed or paid to co-conspirators
and/or records revealing how monies derived from the sales and trafficking of controlled substances are
spent or disbursed, namely property used to commit or conceal the offense of criminal possession and/or
sale of a controlled substance, as defined in Article 220 of the Penal Law of the State of New York, and
also property constituting evidence of the crime of criminal possession and sale of controlled substances
which tends to demonstrate that an offense was committed and the commission of the offense of criminal

USAO_000100

possession and/or sale of controlled substances or the conspiracy to do the same, to wit: said written or printed notes or log books or ledgers associated with trafficking of the controlled substances indicating or depicting names or identities or co-conspirators and types and quantities of controlled substances, monies owed or paid co-conspirators, and records revealing how monies, derived from sales, are spent or disbursed, certain items relating to the possession and sale of those narcotics, such as packaging materials, scales, transaction ledgers, currency, and other items used in the distribution, division, packaging and sales of narcotics, and items consisting of proceeds of such transactions which tend to demonstrate the commission of such offense by a particular person as well as cellular telephones; the foregoing records may be contained within computers and/or cellular telephones and, therefore, the police seek authority to search for and seize computers and/or electronic media and/or cellular telephones capable of storing such records, and to conduct a search thereof for such records. The police further seek authority to search all containers within the subject premises, as such containers are typically used and clearly are capable of use to store items associated with the illegal possession and/or distribution of the controlled substance cocaine, records in connection therewith, and all other items for which the police now seek authority from the Court to search. The search of computers, electronic media and/or cellular telephones includes a search within such items for any evidence of communications, whether by text message, telephone call, voice or audio or video recording, or other data evidencing communication via any application or method for evidence of the illegal possession and/or distribution of the narcotic drug cocaine, fentanyl, heroin and/or the commission of such offense by a particular person and/or the conspiracy to do the same, including evidence of memorialization of evidence of the commission of the crime of possession and/or sale of a controlled substance including photographs, videos and/or recordings,; the police further seek authority to search for items which tend to demonstrate the commission of the offense of possession and/or sale of a controlled substance including items that tend to demonstrate that a particular person is a resident and/or user of the subject premises and, thus, illegally possesses such contraband within the subject premises, such as invoices, bills, access keys/cards, personal correspondence, identification and other materials associating his or her identity with the subject premises.

The Court further authorizes the photographing of the interior of the subject premises searched and any items searched and/or seized therefrom.

YOU ARE HEREBY FURTHER AUTHORIZED to search the person of JAHREEK BUSH, date of birth

AND TO SEARCH FOR AND SEIZE THEREFROM THE FOLLOWING PROPERTY: property that is unlawfully possessed; property that is possessed for the purpose of being used to commit or conceal the commission of an offense; and/or property which constitutes evidence or tends to demonstrate that an offense was committed or that a particular person participated in the commission of an offense in violation of Article 220 of the Penal Law of the State of New York, and seizure of such items, to wit: unlawfully possessed controlled substances, particularly cocaine, heroin, fentanyl as well as implements used in the course of the commission of the offense of criminal possession of a controlled substance, including scales,

as well as all apparatuses, implements and utensils utilized to traffic controlled substances, and any and all packaging materials, monies, written and/or printed notes of log books or ledgers associated with trafficking of the controlled substance cocaine and/or other unlawfully possessed or sold controlled substances, any materials, documents or records indicating or depicting names and identities of co-conspirators , types and/or quantities of controlled substances, monies owed or paid to co-conspirators and/or records revealing how monies derived from the sales and trafficking of controlled substances are spent or disbursed, namely property used to commit or conceal the offense of criminal possession and/or sale of a controlled substance, as defined in Article 220 of the Penal Law of the State of New York, and also property constituting evidence of the crime of criminal possession and sale of controlled substances which tends to demonstrate that an offense was committed and the commission of the offense of criminal possession and/or sale of controlled substances or the conspiracy to do the same, to wit: said written or printed notes or log books or ledgers associated with trafficking of the controlled substances indicating or depicting names or identities or co-conspirators and types and quantities of controlled substances, monies owed or paid co-conspirators, and records revealing how monies, derived from sales, are spent or disbursed, certain items relating to the possession and sale of those narcotics, such as packaging materials, scales, transaction ledgers, currency, and other items used in the distribution, division, packaging and sales of narcotics, and items consisting of proceeds of such transactions which tend to demonstrate the commission of such offense by a particular person as well as cellular telephones; the foregoing records may be contained within computers and/or cellular telephones and, therefore, the police seek authority to search for and seize computers and/or electronic media and/or cellular telephones capable of storing such records, and to conduct a search thereof for such records. The police further seek authority to search all containers on his person, as such containers are typically used and clearly are capable of use to store items associated with the illegal possession and/or distribution of the controlled substance cocaine, records in connection therewith, and all other items for which the police now seek authority from the Court to search. The search of computers, electronic media and/or cellular telephones includes a search within such items for any evidence of communications, whether by text message, telephone call, voice or audio or video recording, or other data evidencing communication via any application or method for evidence of the illegal possession and/or distribution of the narcotic drug cocaine, fentanyl, heroin and/or the commission of such offense by a particular person and/or the conspiracy to do the same, including evidence of memorialization of evidence of the commission of the crime of possession and/or sale of a controlled substance including photographs, videos and/or recordings,; the police further seek authority to search for items which tend to demonstrate the commission of the offense of possession and/or sale of a controlled substance including items that tend to demonstrate that a particular person is a resident and/or user of the subject premises and, thus, illegally possesses such contraband within the subject premises, such as invoices, bills, access keys/cards, personal correspondence, identification and other materials associating his or her identity with the subject premises.

The Court specifically authorizes the search and seizure of electronic media, computers and/or cellular telephones found in the subject premises or on the person of JAHREEK BUSH, dob 11/22/1995 to be conducted in an off-site, laboratory setting.

The Court directs that the Warrant and any property seized pursuant thereto be returned and delivered to the Court without unnecessary delay; physical custody of the results of the search may be retained by the New York State Police or police agency assisting in the execution of this search upon the condition that on Order of the Court such property be returned thereto or delivered to another Court.

The Court hereby specifically finds adequate grounds exist for and authorizes the executing police officers to enter all areas of the subject premises to be searched without giving notice of their presence and/or authority. The Court hereby specifically finds adequate grounds for and authorizes the executing police officers to execute this warrant at any hour of the day or night.

THIS WARRANT MAY BE EXECUTED AT ANY TIME OF THE DAY OR NIGHT WITHIN TEN DAYS OF THE ISSUANCE HEREOF.

This warrant issued this 25 day of April 2023 at __4:30__ AM/PM

HON. JAMES R. FARRELL
SULLIVAN COUNTY COURT JUDGE
AS VILLAGE OF MONTICELLO
JUSTICE

USAO_000193